UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SUSAN McBRIDE,

    Plaintiff,

v.                                                    Case No. 07-12794
                                                 Hon. Lawrence P. Zatkoff

THE CITY OF DETROIT,

    Defendant.

_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on November 25, 2008

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on Defendant's Motion for Summary Judgment [dkt 23]. The parties have fully briefed the Motion. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(e)(2), it is hereby ORDERED that the Motion be resolved on the briefs submitted. For the reasons set forth below, Defendant's Motion is GRANTED IN PART and DENIED IN PART.

**II. BACKGROUND**

Plaintiff alleges that she suffers from a disability and Defendant failed to provide her with a reasonable accommodation, as required by the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq*. (the "Act"). Plaintiff suffers from a life-long sensitivity to perfumes, chemicals, and

other scented objects. When Plaintiff is exposed to such scents, she experiences migraine headaches, nausea, chest tightness, coughing, loss of voice, a scratchy throat, and rhinitis. As a result, Plaintiff avoids certain public areas and cannot sit in proximity to others wearing perfumes or scents.

In September 2000, Defendant hired Plaintiff as a Senior City Planner. This position requires her to be in an office setting approximately 40 hours per week. One of Plaintiff's co-workers is Rosalind Chaney. Plaintiff's initial interactions with Ms. Chaney were limited, but Plaintiff and Ms. Chaney were moved closer together following a rearrangement of workplaces. Shortly before this change, however, Plaintiff had her tonsils and adenoids removed, which temporarily diminished her senses of smell and taste. Thus, Plaintiff was unable to tell if Ms. Chaney was wearing perfume and also was unable to determine if the symptoms she was experiencing were after-effects of the surgery or reactions to perfumes. About that time, Plaintiff and Ms. Chaney attended social office lunches together about once a month and even took a fishing trip together with another co-worker. Plaintiff remembers having a scratchy throat, coughing, and severe headaches during this time period, but she did not know the source of the symptoms. In 2001, Ms. Chaney was moved to a different floor for several years. During the time Ms. Chaney was on the other floor, Plaintiff's symptoms subsided.

In July 2006, Ms. Chaney returned to work on Plaintiff's floor. At that time, Ms. Chaney was wearing perfumes/oils, using a plug-in air freshener in the reception area, and using air fresheners and potpourri in the restroom. Plaintiff's symptoms immediately flared back up within days of Ms. Chaney's return and Plaintiff notified Kim Robinson, her immediate supervisor, about the medical difficulties Plaintiff was experiencing. At one point, John Baran, the department's

Executive Manager, had a conversation with Ms. Chaney. As a result, Ms. Chaney ceased using the plug-in air fresheners but did not stop wearing perfumes/oils. Plaintiff frequently used FMLA leave and sick leave days due to her reactions.

In October 2006, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") (the EEOC dismissed the charge in April 2007), and Plaintiff sought the help of her union representative, Dempsey Addison, to institute a policy change regarding the use of scents in the workplace. Ms. Robinson also advocated the adoption of a scent policy to Mr. Baran, who then contacted the Human Resources ("HR") Department. The HR Department rejected a department wide scent policy and apparently little was done to formulate any other type of policy. Through the union grievance process, Plaintiff spoke with Ms. Chaney again. Ms. Chaney agreed to stop wearing perfume/oils, but she only did so for a brief period before her use of perfumes/oils resumed. Although there were discussions about relocating either Plaintiff's workstation or Ms. Chaney's workstation, neither Plaintiff nor Ms. Chaney was relocated. On July 3, 2007, Plaintiff commenced the present suit.

### III. LEGAL STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Thompson v. Ashe*, 250 F.3d 399, 405 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, and all inferences should be made in favor of the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

To support its motion, the moving party may show "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Although all inferences must be drawn in favor of the nonmoving party, this Court bears no obligation to imagine favorable facts where the nonmoving party has alleged none. The moving party must also set forth facts sufficient to establish its case: "[T]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## IV. ANALYSIS

This case presents two main issues. The first is whether Plaintiff has a disability under the Act. The second is whether Defendant failed to offer Plaintiff a reasonable accommodation.

**A.     The Framework of the Act**

The Act mandates that "no covered entity shall discriminate against a qualified individual with a disability. . . ." 42 U.S.C. § 12112(a). Discrimination includes "not making reasonable accommodations to the known physical and mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of such covered entity." *Id*. § 12112(b)(5)(A). A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id*. § 12111(8).

A *prima facie* case of discrimination for failure to accommodate requires the plaintiff to show:

> (1) she is disabled;
> (2) she is otherwise qualified for the position;
> (3) her employer was aware of her disability;
> (4) an accommodation was needed, in that a causal relationship existed between the disability and the request for accommodation; and,
> (5) the employer failed to provide the necessary accommodation.

*Gerton v. Verizon South, Inc.*, 145 Fed. Appx. 159, 164 (6th Cir. 2005) (citations omitted).

**B.     Plaintiff's Alleged Disability Under the Act**

Although the term "disability" is not specifically defined by the Act, the EEOC defines "disability" as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 29 C.F.R. § 1630.2(g)(1). An impairment substantially limits an individual if she is "[u]nable to perform a major life activity that the average person in the general population can perform" or is "significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." *Id*. § 1630.2(j)(1)(i)-(ii).

The determination of whether one's major life activities are substantially limited must be made on a case-by-case basis. *See Toyota Motor Mfg. Ky., Inc. v. Williams*, 534 U.S. 184, 198-99 (2002); *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 483 (1999). This is especially important in cases where the impairment is "one whose symptoms vary widely from person to person." *Toyota*, 534 U.S. at 199. Chemical sensitivities and allergies constitute impairments with varying effects on individuals. The following factors should be considered when determining whether an individual is substantially limited:

> (i)    The nature and severity of the impairment;
> (ii)   The duration or expected duration of the impairment; and

5

>> (iii) The permanent or long term impact of or resulting from the impairment.

29 C.F.R. § 1630.2(j)(2). Plaintiff argues that her chemical sensitivity is disabling as it substantially limits her major life activities of breathing, speaking, socializing, and reproducing.

> *1. Breathing*

Breathing is one of the major life activities specifically listed in the Regulations. *Id.* § 1630.2(i). Several courts have held that a plaintiff's allergies and/or chemical sensitivities substantially limit the major life activity of breathing or at least raise a genuine issue of material fact as to that issue. *See e.g.*, *Kaufmann v. GMAC Mort. Corp.*, No. 04-5671, 2006 WL 1371185 (E.D. Pa. May 17, 2006); *Wade v. DaimlerChrysler Corp.*, 418 F. Supp. 2d 1045 (E.D. Wisc. 2006); *Hunt v. St. Peter Sch.*, 963 F. Supp. 2d 843 (W.D. Mo. 1997); *Treadwell v. Dow-United Techs.*, 970 F. Supp. 962 (M.D. Ala. 1997); *Whitlock v. Delta Air Lines, Inc.*, 926 F. Supp. 1555 (N.D. Ga. 1995). On the other hand, several courts have found for the defendant on the grounds that the plaintiff was not substantially limited in breathing. *See, e.g.*, *Robinson v. Morgan Stanley & Co., Inc.*, 269 Fed. Appx. 603 (7th Cir. 2008); *Franks v. Cent. Garden & Pet Co.*, No. 3:06-68, 2007 WL 2320624 (M.D. Ga. Aug. 10, 2007); *Keck v. N.Y. State Office of Alcohol and Substance Abuse Servs.*, 10 F. Supp. 2d 194 (N.D.N.Y. 1998). Most importantly, Plaintiff must show that she is significantly restricted as to the condition, manner or duration under which she can breathe compared to the average member of the population. *See Toyota*, 534 U.S. at 198-99.

The severity level of Plaintiff's symptoms is mixed. Plaintiff gets a cough that "causes [her] throat to close a little and [her] chest to tighten" which "makes it really hard to breathe." She also has "something sharp and irritating . . . like a really sharp pebble" in her throat that "makes it a little hard to breathe." Plaintiff has missed work at both this job and her second job as a result. At

various times Plaintiff has been "concerned about driving [her]self home" from work, was "bedridden," and thought "Oh my God, I'm dying." Depending on the level of exposure, Plaintiff's symptoms may remain after the workday ends and sometimes last until the next morning. The symptoms also have a compounding effect, as each day during the week Plaintiff feels worse and can "barely function" by the end of the week. Weekends allow Plaintiff's symptoms to subside until the next Monday, when the cycle repeats. Plaintiff says that a break of about ten days from work is required to begin feeling completely unaffected.

Plaintiff has visited several doctors, allergists, and even a speech therapist as a result of her reactions. She provided Defendant with a note from her allergist stating that she has a "cough and vasmotor [sic] rhinitis primarily triggerred [sic] by irritants" such that "exposure to these smells should be eliminated as much as possible." Plaintiff has a negative reaction every time she is confronted with scents or other chemicals, and Plaintiff is affected in both in the workplace and in public areas. Plaintiff is sensitive to a wide variety of chemicals, not just perfumes and fragrances.

For the foregoing reasons, the Court finds Plaintiff has produced evidence that her breathing is significantly restricted as compared to the average person, such that there is a genuine issue of material fact whether she is a person with a disability under the Act.

### 2. *Interaction with Others*

Plaintiff next argues that she is limited in many everyday activities, including (a) avoiding the detergent aisle of grocery stores, (b) speaking, and (c) sitting next to others wearing scents at theaters, on public transportation, or in other confined quarters. Detergent shopping is not a major life activity. Although speaking is a major life activity, *see* 29 C.F.R. § 1630.2(i), Plaintiff does not cite any instance where she was actually unable to speak or was significantly restricted in her ability

to do so. In fact, Plaintiff's job requires a high amount of communication, and her ability to communicate in performing her job has not been questioned. The Court also notes that Plaintiff gave 139 pages worth of deposition testimony without incident.

The best characterization of the remaining limitations claimed by Plaintiff is an impairment of the major life activity of interacting with others. Circuit courts are split on their recognition of this as a major life activity, and the Sixth Circuit thus far has recognized only that it is valid in other circuits. *See MX Group, Inc. v. City of Covington*, 293 F.3d 326 (6th Cir. 2002). Even assuming its validity, the case law regarding this activity requires a much more substantial limitation than what Plaintiff has shown. *See e.g., McAlindin v. County of San Diego*, 192 F.3d 1226, 1235 (9th Cir. 2008) (the burden is to show "consistently high levels of hostility, social withdrawal, or failure to communicate when necessary"). The fact that Plaintiff moves seats in a theater or on a bus is not the substantial impairment required by the Act. Moreover, Plaintiff's job requires interaction with co-workers and the public, and she seems to accomplish this in a satisfactory manner (except as discussed above with respect to breathing).

For the reasons stated above, the Court concludes, as a matter of law, that Plaintiff's claims regarding detergent shopping, speaking and a substantial impairment in the major life activity of interacting with others shall be dismissed.

*3. Reproduction*

Plaintiff also argues that, as a result of her symptoms, she is substantially limited in the major life activity of reproduction. Specifically, Plaintiff claims that the medication she was taking to alleviate her chemical-related symptoms contraindicated her fertility treatments. As a result, she asserts she was forced to discontinue fertility treatments and is now unable to have a child. The

8

Supreme Court has held reproduction to be a major life activity, *Bragdon v. Abbott*, 524 U.S. 624, 638 (1998), but difficulty in reproducing is not enough, in itself, to constitute a significant limitation on reproduction. *Sauer v. Univ. Internal Med. Assocs., Inc.*, 2008 WL 731492, at *11 (S.D. Ohio Mar. 17, 2008). In a case involving in vitro fertilization, one court held that infertility is a disability under the Act that could significantly limit the major life activity of reproduction. *See LaPorta v. Wal-Mart Stores, Inc.*, 163 F. Supp. 2d 758, 766 (W.D. Mich. 2001). In *LaPorta* and *Bragnon*, however, the disability of infertility was directly linked to the plaintiff's limitation of the major life activity of reproduction. In this case, Plaintiff's alleged disability is incidental to reproduction. The Court is not willing to extend *Bragdon* and *LaPorta* to this case, where medications for an alleged disability, at most, may have *indirectly* contributed to a failure to conceive. The Court therefore dismisses Plaintiff's claim that she has a disability related to reproduction.

### 4. *Conclusion*

For the reasons set forth above, the Court concludes that Plaintiff may proceed with her claim of disability based on the major life activity of breathing, but Plaintiff's claim of disability based on detergent shopping, speaking, interacting with others and reproduction are dismissed.

## C. Reasonable Accommodation

Under the Act, a covered entity must make "reasonable accommodations to the known physical and mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). Whether a proposed accommodation is reasonable is generally a question of fact. *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1184 (6th Cir. 1996). It is undisputed that Plaintiff is a qualified individual (*i.e.*, she can perform the essential functions of her job). Therefore, Defendant is required to reasonably accommodate Plaintiff's disability, if she has one. Plaintiff

9

must first show that a proposed accommodation is objectively reasonable. *Monette*, 90 F.3d at 1183. The burden then shifts to Defendant to show that the accommodation would "impose an undue hardship." 42 U.S.C. § 12112(5)(a); *Monette*, 90 F.3d at 1183-84.

In order to determine an appropriate accommodation, "it may be necessary" for the covered entity to "initiate an informal, interactive process" with the qualified individual. 29 C.F.R. § 1630.2(o)(3). Despite this seemingly permissive language, the Sixth Circuit has held that the interactive process is mandatory and requires a good faith effort by both parties. *See Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 871 (6th Cir. 2007). The requirement of participating in the interactive process is triggered as soon as an accommodation is requested or the employer knows of a disability. *See Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 314 (3d Cir. 1999). The failure to engage in the interactive process is not an independent violation of the Act, *see Bretfielder v. Leis*, 151 Fed. Appx. 379, 386 (6th Cir. 2005), and Plaintiff still must show that a reasonable accommodation was possible in order to hold Defendant liable for a violation of the Act. *See Kleiber*, 485 F.3d at 872 n.6.

As Defendant asserts, a scent-free policy for the workplace is an unreasonable accommodation because it would require an undue hardship. *See e.g.*, *Montenez-Denman v. Slater*, No. 98-4426, 2000 WL 263279 at *3 (6th Cir. Mar. 1, 2000); *Kaufmann v. GMAC Mortg.*, 229 Fed. Appx. 164, 168 (3d Cir. 2007). As such, Plaintiff is barred from arguing to the jury that Defendant was unreasonable in failing to accommodate her by enacting a scent-free policy.

The evidence in this case, however, read in a light most favorable to Plaintiff, shows that she did not seek a scent-free policy. Plaintiff simply wanted to "get an opportunity to work with management and [HR] to help come up with something . . . that would work" to "try[] to get some

relief." Plaintiff sought to limit the most egregious scents through a written policy and employee education regarding chemical sensitivities. To that end, in January 2007, Plaintiff provided Defendant with a copy of a no-scent policy enacted by the Michigan Department of Information Technology as an example of the type of policy she was seeking. That policy provided that "[m]ild scents may be worn in moderation, but strong or offensive scents that become detrimental to the work unit will not be tolerated." Unlike the policies in *Kaufman* and *Montenez-Denman*, this type of policy does not require a completely scent-free environment nor does it address the public or those outside a department. Defendant has not offered evidence why such a policy would create an undue hardship. Defendant also has not offered any explanation why it could not simply have ordered Ms. Chaney to cease wearing offensive perfumes or oils, or why such a directive would constitute an unreasonable accommodation.

Two other possible accommodations discussed amongst the parties involved moving the workplace of Plaintiff or Ms. Chaney. In each situation, the record contains conflicting assertions why neither Plaintiff nor Ms. Chaney was relocated. The parties dispute whether (a) either move was possible or feasible (because of union membership or the need for proximity to other workers), and (b) such move(s) were even pursued (Plaintiff contends that Ms. Chaney was never even contacted about relocating her space).

Plaintiff also asserts she sought accommodation through a union grievance request that her FMLA and/or sick leave time be re-credited as part of her accommodation. Defendant argues that it provided accommodation in the form of granting Plaintiff leave under the Family and Medical Leave Act, 29 U.S.C. §2601 et seq. ("FMLA"). FMLA leave can constitute a reasonable accommodation under the Act, *see* 29 C.F.R. § 825.702; *Swanson v. Senior Res. Connection*, 254

relief." Plaintiff sought to limit the most egregious scents through a written policy and employee education regarding chemical sensitivities. To that end, in January 2007, Plaintiff provided Defendant with a copy of a no-scent policy enacted by the Michigan Department of Information Technology as an example of the type of policy she was seeking. That policy provided that "[m]ild scents may be worn in moderation, but strong or offensive scents that become detrimental to the work unit will not be tolerated." Unlike the policies in *Kaufman* and *Montenez-Denman*, this type of policy does not require a completely scent-free environment nor does it address the public or those outside a department. Defendant has not offered evidence why such a policy would create an undue hardship. Defendant also has not offered any explanation why it could not simply have ordered Ms. Chaney to cease wearing offensive perfumes or oils, or why such a directive would constitute an unreasonable accommodation.

Two other possible accommodations discussed amongst the parties involved moving the workplace of Plaintiff or Ms. Chaney. In each situation, the record contains conflicting assertions why neither Plaintiff nor Ms. Chaney was relocated. The parties dispute whether (a) either move was possible or feasible (because of union membership or the need for proximity to other workers), and (b) such move(s) were even pursued (Plaintiff contends that Ms. Chaney was never even contacted about relocating her space).

Plaintiff also asserts she sought accommodation through a union grievance request that her FMLA and/or sick leave time be re-credited as part of her accommodation. Defendant argues that it provided accommodation in the form of granting Plaintiff leave under the Family and Medical Leave Act, 29 U.S.C. §2601 et seq. ("FMLA"). FMLA leave can constitute a reasonable accommodation under the Act, *see* 29 C.F.R. § 825.702; *Swanson v. Senior Res. Connection*, 254

F. Supp. 2d 945, 961 (S.D. Ohio 2003), but generally additional time off after the exhaustion of FMLA leave is required for the accommodation to be reasonable. *See Vice v. Blue Cross & Blue Shield of Okla.*, 113 Fed. Appx. 854, 856-57 (10th Cir. 2004). *See also Cehrs v. N.E. Ohio Alzheimer's Rsrch Ctr.*, 155 F.3d 775, 782 (6th Cir. 1998) ("It is not clear why unpaid leave should be analyzed differently from any other proposed accommodation under the [Act]"). As such, there is a genuine issue of material fact whether Defendant provided Plaintiff reasonable accommodation in the form of granting Plaintiff FMLA leave.

Moreover, evidence in the record demonstrates that Defendant (through its HR Department) may not have engaged in a proper interactive process, as Defendant's representatives said:

> a. "If she's allergic to perfumes and colognes then she has the problem not the employer."
>
> b. "The problem is [Plaintiff] and her symptoms."
>
> c. "HR's position is to limit the contact between the employees."

For the reasons set forth above, the Court holds that there is a genuine issue of material fact for the jury to resolve with respect to each of the foregoing possible accommodations. Therefore, assuming the jury concludes that Plaintiff has a breathing disability under the Act, the jury shall determine whether the proposed accommodation was reasonable with respect to:

> 1. The adoption of a policy regarding scents,
>
> 2. The movement of Plaintiff,
>
> 3. The movement of Ms. Chaney, and
>
> 4. The FMLA leave afforded Plaintiff.

**D.   Conclusion**

Finally, in addition to barring Plaintiff from arguing the reasonableness of a scent-free policy

to the jury, *see supra* at page 10, there are two "proposed" accommodations by Defendant the Court concludes are unreasonable as a matter of law. First, although Ms. Chaney apparently agreed to stop using perfumes on at least two occasions after discussions with Plaintiff and/or Defendant's representatives, her use resumed shortly thereafter each time. Second, Defendant mentions the use of a fan or filter. The only person who discussed it (Ms. Robinson), however, said that HR raised this issue to her but "nothing" further was done. In addition, there is no evidence the fan or filter accommodation was proposed to Plaintiff. Therefore, Defendant is prohibited from arguing either of these accommodations as a defense to the jury.

## V.  CONCLUSION

For the reasons set forth above, IT IS ORDERED that Defendant's Motion for Summary Judgment [dkt 23] is GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED.


S/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated:  November 25, 2008


CERTIFICATE OF SERVICE

13

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on November 25, 2008.

        S/Marie E. Verlinde
        Case Manager
        (810) 984-3290